UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| TREVOR ABRAMSON, Individually and On Behalf of All Others Similarly Situated, | Case No. |
| Plaintiff, | COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS |
| v. | DEMAND FOR JURY TRIAL |
| NEWLINK GENETICS CORPORATION, CHARLES J. LINK, JR., JOHN B. HENNEMAN III, and GORDON H. LINK, JR., | |
| Defendants. | |

## CLASS ACTION COMPLAINT

Plaintiff Trevor Abramson ("Plaintiff"), individually and on behalf of all other persons similarly situated, by his undersigned attorneys, for his complaint against Defendants, alleges the following based upon personal knowledge as to himself and his own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through his attorneys, which included, among other things, a review of the Defendants' public documents, conference calls and announcements made by Defendants, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding NewLink Genetics Corporation ("NewLink" or the "Company"), analysts' reports and advisories about the Company, and information readily obtainable on the Internet.  Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

**NATURE OF THE ACTION**

1.      This is a federal securities class action on behalf of a class consisting of all persons other than Defendants who purchased or otherwise acquired NewLink securities between September 17, 2013 and May 9, 2016, both dates inclusive (the "Class Period"), seeking to recover damages caused by Defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, against the Company and certain of its top officials.

2.      NewLink, a biopharmaceutical company, focuses on discovering, developing, and commercializing immunotherapeutic products to enhance treatment options for patients with cancer.  NewLink was founded in 1999 and is headquartered in Ames, Iowa.  The Company's stock trades on the NASDAQ under the ticker symbol "NLNK."

3.      Among the Company's product candidates is algenpantucel-L, a pancreatic cancer treatment.  On September 17, 2013, NewLink announced the completion of patient enrollment in the Company's Phase algenpantucel-L "IMPRESS" clinical study.

4.      Throughout the Class Period, Defendants made materially false and misleading statements regarding the Company's business, operational and compliance policies. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) algenpantucel-L was ineffective and potentially harmful to patients; and (ii) as a result of the foregoing, NewLink's public statements were materially false and misleading at all relevant times.

5.      On May 9, 2016, post-market, NewLink announced that algenpantucel-L did not meet the main goal in the Company's Phase 3 IMPRESS study.  Patients treated with algenpantucel-L lived for a median of 27.3 months in NewLink's Phase 3 trial, compared to median survival of 30.4 months for patients treated with standard therapy, suggesting that patients were actually *harmed* by NewLink's treatment.

6.      On this news, NewLink's stock price fell $5.05, or 30.61%, to close at $11.45 on May 10, 2016.

7.      As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

8.      The claims asserted herein arise under and pursuant to §§10(b) and 20(a) of the Exchange Act (15 U.S.C. §§78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. §240.10b-5).

9.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1337, and Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

10.      Venue is proper in this District pursuant to §27 of the Exchange Act and 28 U.S.C. §1391(b), as the Company's common stock trades on the NASDAQ, located within this District.

11.      In connection with the acts, conduct and other wrongs alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mail, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

12.      Plaintiff, as set forth in the attached Certification, acquired NewLink securities at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosures.

13.      Defendant NewLink is incorporated in Delaware, and the Company's principal executive offices are located at 2503 South Loop Drive, Ames, Iowa 50010.

14.     Defendant Charles J. Link, Jr. ("Charles Link") has served at all relevant times as the Company's Chief Executive Officer.

15.     Defendant John B. Henneman III ("Henneman") has served as the Company's Chief Financial Officer ("CFO") since October 2014.

16.     Defendant Gordon H. Link, Jr. ("Gordon Link") served as the Company's CFO from 2008 to October 2014.

17.     The Defendants described in ¶¶ 14-16 are sometimes hereinafter referred to as the "Individual Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background

18.     NewLink, a biopharmaceutical company, focuses on discovering, developing, and commercializing immunotherapeutic products to enhance treatment options for patients with cancer.   Among the Company's product candidates is algenpantucel-L, a pancreatic cancer treatment currently in Phase 3 clinical trials.

### Materially False and Misleading Statements Issued During the Class Period

19.     The Class Period begins on September 17, 2013, when NewLink filed a Form 8-K with the SEC and issued a press release entitled "NewLink Genetics Completes Patient Enrollment in Phase 3 Algenpantucel-L (IMPRESS) Clinical Study" (the "September 2013 Press Release"). In the September 2013 Press Release, the Company stated, in part:

> "Our promising Phase 2 results enabled us to successfully collaborate with many major medical centers and the leaders within those institutions," Dr. Link remarked. "To date, IMPRESS is the largest corporate sponsored resected pancreatic cancer study yet conducted. ***We are confident in the stringency of this study design and the statistical power provided by the large number of patients participating in this trial as we enthusiastically look forward to the clinical results***."

"***We are increasingly confident in the progress made with the clinical development of algenpantucel-L***," said Nicholas N. Vahanian, M.D., President, Chief Medical Officer of NewLink Genetics. "***As we enter a critical data collection and analysis phase of the study we are encouraged by the progress made in such a short period of time***. Completion of study enrollment is a critical step towards our mission of bringing better treatment options to pancreatic cancer patients who are in desperate need of more promising alternatives."

(Emphases added.)

20.    On this news, NewLink's share price increased by $0.28, or 0.02%, to close at $17.51 on September 17, 2013.

21.    On November 12, 2013, NewLink filed a Quarterly Report on Form 10-Q with the SEC announcing the Company's financial and operating results for the quarter ended September 30, 2013 (the "Q3 2013 10-Q"). For the quarter, NewLink reported a net loss of $8.12 million, or $0.32 per diluted share, on revenue of $0.27 million, compared to a net loss of $5.85 million, or $0.28 per diluted share, on revenue of $0.33 million for the same period in the prior year.

22.    In the Q3 2013 10-Q, NewLink stated, in part:

Our lead product candidate, HyperAcute Pancreas cancer immunotherapy (algenpantucel-L), or HyperAcute Pancreas, is being studied in two Phase 3 clinical trials; one in surgically-resected pancreatic cancer patients that is being performed under a Special Protocol Assessment, or SPA, with the United States Food and Drug Administration, or FDA, and one in locally advanced pancreatic cancer patients. We initiated these trials based on encouraging Phase 2 data that suggest improvement in both disease-free and overall survival. We have also received Fast Track and Orphan Drug designations from the FDA for this product candidate for the adjuvant treatment of surgically-resected pancreatic cancer and Orphan Medicinal Product designation for this product candidate from the European Commission. The primary endpoint for our IMPRESS (Immunotherapy for Pancreatic Resectable cancer Survival Study) Phase 3 trial with algenpantucel-L for patients with surgically-resected pancreatic cancer is overall survival and, as determined by the SPA, the first interim analysis will be conducted when 222 deaths are reported for the study. This triggering event for the first interim analysis has not yet occurred. We have three additional product candidates in clinical development, including our HyperAcute Lung cancer immunotherapy (tergenpumatucel-L), or HyperAcute Lung, our HyperAcute Melanoma cancer immunotherapy (dorgenmeltucel-L), or HyperAcute Melanoma, and 1-methyl-D-tryptophan (D-IMT), or indoximod, our lead indoleamine-(2.3)-dioxygenase, or

IDO pathway inhibitor product candidate. ***To date, our HyperAcute product candidates have been dosed in more than 500 cancer patients, either as a monotherapy or in combination with other therapies, and have demonstrated a favorable safety profile.***

(Emphasis added.)

23.     The Q3 2013 10-Q contained signed certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") by Defendants Charles Link and Gordon Link, stating that the financial information contained in the Q3 2013 10-Q was accurate and disclosed any material changes to the Company's internal control over financial reporting.

24.     On March 7, 2014, NewLink filed a Form 8-K with the SEC and issued a press release entitled "NewLink Genetics' Independent Review Committee Recommends Study Continuation Without Modification After Completion of First Interim Analysis of IMPRESS Phase 3 Pancreatic Cancer Trial with Algenpantucel-L" (the "March 2014 Press Release").  In the March 2014 Press Release, the Company stated, in part:

> As part of the planned interim analysis, scheduled to occur following 222 patient events, the independent data safety monitoring committee (DSMC) met to review available patient data. Following their review, the DSMC recommended that the study should proceed as planned, without modification. A second interim analysis is planned upon reaching 333 patient events and, if needed, a final analysis is planned at 444 patient events.
>
> "As we have previously emphasized, continuation of this study was an anticipated outcome considering the high statistical threshold assigned to this first interim analysis under the special protocol assessment," commented Dr. Charles Link, Chairman and Chief Executive Officer of NewLink.
>
> "In any case, ***it is reassuring that no unexpected safety issues or other concerns were raised by the independent data safety monitoring committee***," said Dr. Nicholas N. Vahanian, President and Chief Medical Officer of NewLink Genetics. "Now, with the first interim analysis behind us, we look forward to continuing the study and to gathering additional, more mature data in support of our mission to provide improved treatment options for patients with pancreatic cancer."

(Emphasis added.)

25.     On March 12, 2014, NewLink filed an Annual Report on Form 10-K with the SEC announcing the Company's financial and operating results for the quarter and year ended December 31, 2013 (the "2013 10-K").  For the quarter, NewLink reported a net loss of $8.05 million, or $0.31 per diluted share, on revenue of $0.29 million, compared to a net loss of $6.32 million, or $0.30 per diluted share, on revenue of $0.30 million for the same period in the prior year.  For 2013, NewLink reported a net loss of $31.18 million, or $1.23 per diluted share, on revenue of $1.09 million, compared to a net loss of $23.32 million, or $1.12 per diluted share, on revenue of $1.69 million in 2012.

26.     In the 2013 10-K, NewLink stated, in part:

In May 2010, we initiated our Phase 3 IMPRESS clinical trial for algenpantucel-L. . . . We completed enrollment in September 2013 with 722 patients and project the first and second interim analyses of data from this study will occur in early 2014 and late 2014, respectively.

We initiated the IMPRESS trial based on encouraging interim data from our Phase 2 clinical trial that was fully enrolled in March 2010. As of June 2012, all patients in this Phase 2 study had reached at least 24 months of follow-up with a median follow-up period of approximately 33 months. The study met its primary objective with an established median disease--free survival of 14.1 months. The secondary endpoint of overall survival showed one-year overall survival to be 86 percent. As of June 2012, interim efficacy data for the 26 patients receiving high dose therapy demonstrated median disease-free survival of 15.3 months and a one-year overall survival rate of 96 percent. ***To date, algenpantucel-L has demonstrated good tolerability*** and a favorable safety profile in the Phase 2 study. The most common treatment-related adverse reactions (reported by at least 5 percent of patients) for the product candidate included injection site reactions (40%), induration (19%), injection site pain (10%), pyrexia (9%), erythema (7%), fatigue (19%), nausea (6%), lymphopenia (6%) and pruritus (5%). All of these events were grade three or less. The common terminology criteria, or CTC, of the National Cancer Institute, or NCI, categorizes adverse events into five grades, where grade one is mild, grade two is moderate, grade three is severe, grade four is life-threatening and grade five is death.

(Emphasis added.)

27.     The 2013 10-K contained signed certifications pursuant to SOX by Defendants Charles Link and Gordon Link, stating that the financial information contained in the 2013 10-K was accurate and disclosed any material changes to the Company's internal control over financial reporting.

28.     On May 8, 2014, NewLink filed a Quarterly Report on Form 10-Q with the SEC announcing the Company's financial and operating results for the quarter ended March 31, 2014 (the "Q1 2014 10-Q").  For the quarter, NewLink reported a net loss of $9.24 million, or $0.33 per diluted share, on revenue of $0.33 million, compared to a net loss of $7.93 million, or $0.33 per diluted share, on revenue of $0.30 million for the same period in the prior year.

29.     In the Q1 2014 10-Q, NewLink stated, in part:

Our lead HyperAcute product candidate, algenpantucel-L (HyperAcute Pancreas) is being studied in two randomized Phase 3 clinical trials. The first trial, IMPRESS (Immunotherapy for Pancreatic Resectible Cancer Survival Study) has completed enrollment of 722 patients with resected pancreas cancer and is being performed under a Special Protocol Assessment, or SPA, with the United States Food and Drug Administration, or FDA. A second Phase 3 Trial, PILLAR (Pancreatic Immunotherapy with algenpantucel-L for Locally Advanced non-Resectible disease), is currently enrolling patients. We initiated these trials based on encouraging Phase 2 data that suggest improvement in both disease-free and overall survival. We have received Fast Track and Orphan Drug designations from the FDA for algenpantucel-L for the adjuvant treatment of patients with surgically-resected pancreatic cancer and Orphan Medicinal Product designation for algenpantucel-L from the European Commission. The primary endpoint for our IMPRESS trial with algenpantucel-L for patients with surgically-resected pancreatic cancer is overall survival and, as determined by the SPA, the first interim analysis was conducted when 222 deaths were reported for the study, which occurred during the quarter ending March 31, 2014. As part of this planned interim analysis, the independent data safety monitoring committee, or DSMC, met to review available patient data. As anticipated, following their review, the DSMC recommended that the study should proceed as planned, without modification. A second interim analysis is planned upon reaching 333 patient events and, if needed, a final analysis is planned at 444 patient events. Our additional Hyper Acute product candidates in clinical development include tergenpumatucel-L (HyperAcute Lung), dorgenmeltucel-L (HyperAcute Melanoma), HyperAcute Prostate and Hyper Acute Renal. ***To date, our HyperAcute product candidates have been dosed in more than 500 cancer patients, either as a monotherapy or in***

> *combination with other treatments and have demonstrated a favorable safety profile.*

(Emphasis added.)

30.     The Q1 2014 10-Q contained signed certifications pursuant to SOX by Defendants Charles Link and Gordon Link, stating that the financial information contained in the Q1 2014 10-Q was accurate and disclosed any material changes to the Company's internal control over financial reporting.

31.     On August 5, 2014, NewLink filed a Quarterly Report on Form 10-Q with the SEC announcing the Company's financial and operating results for the quarter ended June 30, 2014 (the "Q2 2014 10-Q").   For the quarter, NewLink reported a net loss of $9.16 million, or $0.33 per diluted share, on revenue of $0.21 million, compared to a net loss of $7.08 million, or $0.28 per diluted share, on revenue of $0.23 million for the same period in the prior year.

32.     In the Q2 2014 10-Q, NewLink stated, in part:

> Our lead HyperAcute product candidate, algenpantucel-L (HyperAcute Pancreas) is being studied in two randomized Phase 3 clinical trials. The first trial, IMPRESS (Immunotherapy for Pancreatic Resectible Cancer Survival Study) has completed enrollment of 722 patients with resected pancreas cancer and is being performed under a Special Protocol Assessment, or SPA, with the United States Food and Drug Administration, or FDA. A second Phase 3 Trial, PILLAR (Pancreatic Immunotherapy with algenpantucel-L for Locally Advanced non-Resectible disease), is currently enrolling patients. We initiated these trials based on encouraging Phase 2 data that suggest improvement in both disease-free and overall survival. We have received Fast Track and Orphan Drug designations from the FDA for algenpantucel-L for the adjuvant treatment of patients with surgically-resected pancreatic cancer and Orphan Medicinal Product designation for algenpantucel-L from the European Commission. The primary endpoint for our IMPRESS trial with algenpantucel-L for patients with surgically-resected pancreatic cancer is overall survival and, as determined by the SPA, the first interim analysis was conducted when 222 deaths were reported for the study, which occurred during the quarter ending March 31, 2014. As part of this planned interim analysis, the independent data safety monitoring committee, or DSMC, met to review available patient data. As anticipated, following their review, the DSMC recommended that the study should proceed as planned, without modification. A second interim analysis is planned upon reaching 333 patient events and, if needed,

a final analysis is planned at 444 patient events. Our additional Hyper Acute product candidates in clinical development include tergenpumatucel-L (HyperAcute Lung), dorgenmeltucel-L (HyperAcute Melanoma), HyperAcute Prostate and Hyper Acute Renal. ***To date, our HyperAcute product candidates have been dosed in more than 500 cancer patients, either as a monotherapy or in combination with other treatments and have demonstrated a favorable safety profile.***

(Emphasis added.)

33.     The Q2 2014 10-Q contained signed certifications pursuant to SOX by Defendants Charles Link and Gordon Link, stating that the financial information contained in the Q2 2014 10-Q was accurate and disclosed any material changes to the Company's internal control over financial reporting.

34.     On November 10, 2014, NewLink filed a Quarterly Report on Form 10-Q with the SEC announcing the Company's financial and operating results for the quarter ended September 30, 2014 (the "Q3 2014 10-Q").  For the quarter, NewLink reported a net loss of $5.60 million, or $0.20 per diluted share, on revenue of $2.80 million, compared to a net loss of $8.12 million, or $0.32 per diluted share, on revenue of $0.27 million for the same period in the prior year.

35.     In the Q3 2014 10-Q, NewLink stated, in part:

Our lead HyperAcute product candidate, algenpantucel-L (HyperAcute Pancreas) is being studied in two randomized Phase 3 clinical trials. The first trial, IMPRESS (Immunotherapy for Pancreatic Resectible Cancer Survival Study) has completed enrollment of 722 patients with resected pancreas cancer and is being performed under a Special Protocol Assessment, or SPA, with the United States Food and Drug Administration, or FDA. A second Phase 3 Trial, PILLAR (Pancreatic Immunotherapy with algenpantucel-L for Locally Advanced non-Resectible disease), is currently enrolling patients. We initiated these trials based on encouraging Phase 2 data that suggest improvement in both disease-free and overall survival. We have received Fast Track and Orphan Drug designations from the FDA for algenpantucel-L for the adjuvant treatment of patients with surgically-resected pancreatic cancer and Orphan Medicinal Product designation for algenpantucel-L from the European Commission. The primary endpoint for our IMPRESS trial with algenpantucel-L for patients with surgically-resected pancreatic cancer is overall survival and, as determined by the SPA, the first interim analysis was conducted when 222 deaths were reported for the study, which

occurred during the quarter ending March 31, 2014. As part of this planned interim analysis, the independent data safety monitoring committee, or DSMC, met to review available patient data. As anticipated, following their review, the DSMC recommended that the study should proceed as planned, without modification. A second interim analysis is planned upon reaching 333 patient events and, if needed, a final analysis is planned at 444 patient events. Our additional HyperAcute product candidates in clinical development include tergenpumatucel-L (HyperAcute Lung), dorgenmeltucel-L (HyperAcute Melanoma), HyperAcute Prostate and HyperAcute Renal. ***To date, our HyperAcute product candidates have been dosed in more than 600 cancer patients, either as a monotherapy or in combination with other treatments and have demonstrated a favorable safety profile.***

(Emphasis added.)

36.    The Q3 2014 10-Q contained signed certifications pursuant to SOX by Defendants Charles Link and Henneman, stating that the financial information contained in the Q3 2014 10-Q was accurate and disclosed any material changes to the Company's internal control over financial reporting.

37.    On March 16, 2015, NewLink filed an Annual Report on Form 10-K with the SEC announcing the Company's financial and operating results for the quarter and year ended December 31, 2014 (the "2014 10-K"). For the quarter, NewLink reported net income of $126.86 million, or $4.05 per diluted share, on revenue of $169.25 million, compared to a net loss of $8.05 million, or $0.31 per diluted share, on revenue of $0.29 million for the same period in the prior year. For 2014, NewLink reported net income of $96.02 million, or $3.09 per diluted share, on revenue of $172.59 million, compared to a net loss of $31.18 million, or $1.23 per diluted share, on revenue of $1.09 million for 2013.

38.    In the 2014 10-K, NewLink stated, in part:

Our Phase 3 IMPRESS study in surgically-resected pancreatic cancer patients is being performed under an SPA with the FDA. Algenpantucel-L has also received Fast Track and Orphan Drug designations from the FDA for the adjuvant treatment of surgically-resected pancreatic cancer.

In May 2010, we initiated our Phase 3 IMPRESS clinical trial for algenpantucel-L. . . . We completed enrollment in September 2013 with 722 patients and completed the first interim analysis of data in the first quarter of 2014. We project the second interim analysis of data from this study will occur in the first or second quarter of 2015.

We initiated the IMPRESS trial based on encouraging interim data from our Phase 2 clinical trial that was fully enrolled in March 2010. As of June 2012, all patients in this Phase 2 study had reached at least 24 months of follow-up with a median follow-up period of approximately 33 months. The study met its primary objective with an established median disease-free survival of 14.1 months. The secondary endpoint of overall survival showed one-year overall survival to be 86 percent. As of June 2012, interim efficacy data for the 26 patients receiving high dose therapy demonstrated median disease-free survival of 15.3 months and a one-year overall survival rate of 96 percent. ***Algenpantucel-L has demonstrated good tolerability and a favorable safety profile*** in the Phase 2 study. The most common treatment-related adverse reactions (reported by at least 5 percent of patients) for the product candidate included injection site reactions (40%), induration (19%), injection site pain (10%), pyrexia (9%), erythema (7%), fatigue (19%), nausea (6%), lymphopenia (6%) and pruritus (5%). All of these events were grade three or less. The common terminology criteria, or CTC, of the National Cancer Institute, or NCI, categorizes adverse events into five grades, where grade one is mild, grade two is moderate, grade three is severe, grade four is life-threatening and grade five is death.

(Emphasis added.)

39.     The 2014 10-K contained signed certifications pursuant to SOX by Defendants Charles Link and Henneman, stating that the financial information contained in the 2014 10-K was accurate and disclosed any material changes to the Company's internal control over financial reporting.

40.     On May 11, 2015, NewLink filed a Quarterly Report on Form 10-Q with the SEC announcing the Company's financial and operating results for the quarter ended March 31, 2015 (the "Q1 2015 10-Q").  For the quarter, NewLink reported net income of $11.19 million, or $0.35 per diluted share, on revenue of $39.20 million, compared to a net loss of $9.24 million, or $0.33 per diluted share, on revenue of $0.33 million for the same period in the prior year.

41.     In the Q1 2015 10-Q, NewLink stated, in part:

Our lead product candidate, algenpantucel-L or HyperAcute Pancreas, is being studied in two randomized Phase 3 clinical trials. The first trial, IMPRESS (Immunotherapy for Pancreatic Resectable Cancer Survival Study) has completed enrollment of 722 patients with resected pancreas cancer and is being performed under a Special Protocol Assessment, or SPA, with the United States Food and Drug Administration, or FDA. A second Phase 3 trial, PILLAR (Pancreatic Immunotherapy with algenpantucel-L for Locally Advanced non-Resectable disease), is currently enrolling patients. We initiated these trials based on encouraging Phase 2 data that suggest improvement in both disease-free and overall survival. We have received Fast Track and Orphan Drug designations from the FDA and Orphan Medicinal Product designation for algenpantucel-L from the European Commission for the adjuvant treatment of patients with surgically-resected pancreatic cancer. The primary endpoint for our IMPRESS trial with algenpantucel-L for patients with surgically-resected pancreatic cancer is overall survival. As determined by the SPA, the first interim analysis was conducted when 222 deaths were reported for the study, which occurred during the first quarter of 2014. As part of this planned interim analysis, the independent data safety monitoring committee, or DSMC, met to review available patient data. As anticipated, following its review, the DSMC recommended that the study should proceed as planned, without modification.

. . .

On May 11, 2015, the Company announced the continuation without any modification or sample size adjustment for its pivotal, Phase 3 **IM**munotherapy for **P**ancreatic **RES**ectable cancer **S**tudy, called "IMPRESS," of algenpantucel-L for patients with surgically resected pancreatic cancer following the second planned interim data analysis.

. . .

After careful consideration, including a series of communications with the FDA regarding the statistical analysis plan, the Company decided to retain the benefit of the SPA and not to change the statistical analysis plan as defined in the original protocol. For the second interim analysis, the independent data safety monitoring committee (DSMC) reviewed available patient data with the originally planned log-rank analysis and sample size recalculation, in all respects consistent with the SPA. No other statistical methods were used. The DSMC recommended the study proceed without any modifications, including sample size adjustment, to final analysis. Therefore the Company believes the trial remains powered to determine efficacy upon the occurrence of 444 events.

42.   The Q1 2015 10-Q contained signed certifications pursuant to SOX by Defendants

Charles Link and Henneman, stating that the financial information contained in the Q1 2015 10-Q

was accurate and disclosed any material changes to the Company's internal control over financial reporting.

43.     On May 11, 2015, NewLink also issued a press release entitled "NewLink Genetics' IMPRESS Phase 3 Pancreatic Cancer Trial with Algenpantucel-L to Continue Following Second Interim Analysis" (the "May 2015 Press Release").

> "We look forward to bringing this study to its planned end point, as algenpantucel-L has the potential to be the first and only FDA approved drug for resected pancreatic cancer, providing additional treatment options to patients, their families and physicians," said Nicholas N. Vahanian, M.D., President and Chief Medical Officer of NewLink Genetics.
>
> . . .
>
> "***Our fast-track status, orphan drug designation and SPA give us continued confidence in our regulatory strategy. With this in mind, we are thoughtfully preparing for regulatory filings and commercial activities associated with a potentially positive outcome of the trial***," said Charles Link, Jr., M.D., Chairman and Chief Executive Officer. "There has been tremendous progress in oncology therapeutics, but there have been only incremental improvements in overall survival rates for pancreatic cancer. Our goal is that the result of the IMPRESS study will contribute to the advancement of immunotherapy as a new treatment option."

(Emphasis added.)

44.     On August 6, 2015, NewLink filed a Quarterly Report on Form 10-Q with the SEC announcing the Company's financial and operating results for the quarter ended June 30, 2015 (the "Q2 2015 10-Q").  For the quarter, NewLink reported a net loss of $14.09 million, or $0.49 per diluted share, on revenue of $7.45 million, compared to a net loss of $9.16 million, or $0.33 per diluted share, on revenue of $0.21 million for the same period in the prior year.

45.     In the Q2 2015 10-Q, NewLink stated, in part:

> Our most advanced program, algenpantucel-L, is being studied in two randomized Phase 3 clinical trials. The first trial, IMPRESS (IMmunotherapy for Pancreatic REsectable cancer Survival Study) has completed enrollment of 722 patients with surgically resected pancreatic cancer and is being performed under a Special

Protocol Assessment, or SPA, with the United States Food and Drug Administration, or the FDA. A second Phase 3 trial, PILLAR (Pancreatic Immunotherapy with algenpantucel-L for Locally Advanced non-Resectable disease), is currently enrolling patients. We initiated these trials based on encouraging Phase 2 data that suggest potential to improve both disease-free and overall survival. Algenpantucel-L has received Fast Track and Orphan Drug designations from the FDA and Orphan Medicinal Product designation from the European Commission for the adjuvant treatment of patients with surgically-resected pancreatic cancer. The primary endpoint for our IMPRESS trial with algenpantucel-L for the adjuvant treatment of patients with surgically resected pancreatic cancer is overall survival. As determined by the SPA, the first interim analysis was conducted when 222 deaths were reported for the study, which occurred during the first quarter of 2014. As part of this planned interim analysis, the independent data safety monitoring committee, or DSMC, met to review available patient data. As anticipated, following its review, the DSMC recommended that the study should proceed as planned, without modification. The second interim analysis was completed during the second quarter of 2015 following 333 deaths, which had occurred prior to February 26, 2015. For the second interim analysis, the DSMC reviewed available patient data and recommended the study proceed without modification to final analysis. The Company has announced that concurrently with the second interim analysis a Kaplan-Meier estimation of overall median survival calculated from the same data set determined that the estimated blended median overall survival in the trial from the time of randomization was 28.5 months for all patients. Median time from surgery to randomization was approximately 1.5 months. Therefore median survival from surgery was estimated to be approximately 30 months for all patients in our study. The study is powered to show an improvement in overall survival after the planned 442 events.

46.     The Q2 2015 10-Q contained signed certifications pursuant to SOX by Defendants Charles Link and Henneman, stating that the financial information contained in the Q2 2015 10-Q was accurate and disclosed any material changes to the Company's internal control over financial reporting.

47.     On November 6, 2015, NewLink filed a Quarterly Report on Form 10-Q with the SEC announcing the Company's financial and operating results for the quarter ended September 30, 2015 (the "Q3 2015 10-Q").  For the quarter, NewLink reported a net loss of $15.91 million, or $0.55 per diluted share, on revenue of $14.21 million, compared to a net loss of $5.60 million, or $0.20 per diluted share, on revenue of $2.80 million for the same period in the prior year.

48.     In the Q3 2015 10-Q, NewLink stated, in part:

Our most advanced program, algenpantucel-L, which utilizes our HyperAcute Cellular Immunotherapy technology, is being studied in two randomized Phase 3 clinical trials. The first trial, IMPRESS (IMmunotherapy for Pancreatic REsectable cancer Survival Study) has completed enrollment of 722 patients with surgically resected pancreatic cancer and is being performed under a Special Protocol Assessment, or SPA, with the United States Food and Drug Administration, or the FDA. IMPRESS data is expected during 2016. A second Phase 3 trial, PILLAR (Pancreatic Immunotherapy with algenpantucel-L for Locally Advanced non-Resectable disease), is currently enrolling patients and is expected to complete enrollment before the end of 2015. We initiated these trials based on encouraging Phase 2 data that suggest potential to improve both disease-free and overall survival. Algenpantucel-L has received Fast Track Designation from the FDA for the adjuvant treatment of Stage I/II resected pancreatic adenocarcinoma in combination with adjuvant gemcitabine chemotherapy and Orphan Drug designation from the FDA for the treatment of pancreatic cancer, as well as Orphan Medicinal Product designation from the European Commission for the adjuvant treatment of patients with surgically-resected pancreatic cancer. The primary endpoint for our IMPRESS trial with algenpantucel-L for the adjuvant treatment of patients with surgically resected pancreatic cancer is overall survival. As determined by the SPA, the first interim analysis was conducted when 222 events (deaths) were reported for the clinical trial, which occurred during the first quarter of 2014. As part of this planned interim analysis, the independent data safety monitoring committee, or DSMC, met to review available patient data. As anticipated, following its review, the DSMC recommended that the clinical trial should proceed as planned, without modification. The second interim analysis was completed during the second quarter of 2015 following 333 events, which had occurred prior to February 26, 2015. For the second interim analysis, the DSMC reviewed available patient data and recommended the clinical trial proceed without modification to final analysis. We previously announced that concurrent with the second interim analysis, a Kaplan-Meier estimation of overall median survival calculated from the same data set determined that the estimated blended median overall survival in the trial from the time of randomization was 28.5 months for all patients. This compares with a long-standing Kaplan-Meier estimated survival in resected pancreatic cancer of approximately 20 months. Median time from surgery to randomization was approximately 1.5 months. Therefore, median survival from surgery was estimated to be approximately 30 months for all patients in our clinical trial. The clinical trial is powered to show an improvement in overall survival after the anticipated 442 events.

49.     The Q3 2015 10-Q contained signed certifications pursuant to SOX by Defendants

Charles Link and Henneman, stating that the financial information contained in the Q3 2015 10-Q

was accurate and disclosed any material changes to the Company's internal control over financial reporting.

50.     On February 29, 2016, NewLink filed an Annual Report on Form 10-K with the SEC announcing the Company's financial and operating results for the quarter and year ended December 31, 2015 (the "2015 10-K").  For the quarter, NewLink reported a net loss of $21.57 million, or $0.75 per diluted share, on revenue of $7.65 million, compared to net income of $126.86 million, or $4.05 per diluted share, on revenue of $169.25 million for the same period in the prior year.  For 2015, NewLink reported a net loss of $40.38 million, or $1.41 per diluted share, on revenue of $68.50 million, compared to net income of $96.02 million, or $3.09 per diluted share, on revenue of $172.59 million for 2014.

51.     In the 2015 10-K, NewLink stated, in part:

Our most advanced program, algenpantucel-L, which utilizes our HyperAcute Cellular Immunotherapy technology, is being studied in two randomized Phase 3 clinical trials. Our first Phase 3 clinical trial, IMPRESS (IMmunotherapy for Pancreatic REsectable cancer Survival Study) completed enrollment of 722 patients with surgically resected pancreatic cancer. The primary endpoint for our IMPRESS trial is overall survival. We expect to report primary IMPRESS results during 2016. Our second Phase 3 clinical trial, PILLAR (Pancreatic Immunotherapy with algenpantucel-L for Locally Advanced non-Resectable disease), has completed enrollment with over 300 patients. The primary endpoint for our PILLAR trial is overall survival. We initiated these trials based on encouraging Phase 2 data that suggest potential to improve both disease-free and overall survival. Algenpantucel-L has received Fast Track Designation from the FDA for the adjuvant treatment of Stage I/II resected pancreatic adenocarcinoma in combination with adjuvant gemcitabine chemotherapy with or without adjuvant 5-FU-based chemoradiotherapy and Orphan Drug designation from the FDA for the treatment of pancreatic cancer, as well as Orphan Medicinal Product designation from the European Commission for the treatment of pancreatic cancer.

. . .

Algenpantucel-L has received Fast Track Designation from the FDA for the adjuvant treatment of Stage I/II resected pancreatic adenocarcinoma in combination with adjuvant gemcitabine chemotherapy, and Orphan Drug designation from the FDA for the treatment of pancreatic cancer. In May 2010, we initiated IMPRESS,

our first Phase 3 clinical trial in patients with surgically-resected pancreatic cancer patients. We completed enrollment in September 2013 with 722 patients. The primary endpoint for our IMPRESS trial with algenpantucel-L for the adjuvant treatment of patients with surgically resected pancreatic cancer is overall survival. The first interim analysis was conducted when 222 events (deaths) were reported for the clinical trial, which occurred during the first quarter of 2014. As part of this planned interim analysis, the independent data safety monitoring committee, or DSMC, met to review available patient data. As anticipated, following its review, the DSMC recommended that the clinical trial should proceed as planned, without modification. The second interim analysis was completed during the second quarter of 2015 following 333 events, which had occurred prior to February 26, 2015. For the second interim analysis, the DSMC reviewed available patient data and recommended the clinical trial proceed without modification to final analysis. We previously announced that concurrent with the second interim analysis, a Kaplan-Meier estimation of overall median survival calculated from the same data set determined that the estimated blended median overall survival in the trial from the time of randomization was 28.5 months for all patients. This compares with a long-standing Kaplan-Meier estimated survival of patients with resected pancreatic cancer of approximately 20 months. Median time from surgery to randomization was approximately 1.5 months. Therefore, median survival from surgery was estimated to be approximately 30 months for all patients in our IMPRESS clinical trial. *The clinical trial is powered to show an improvement in overall survival after 442 events*, and we expect to report primary results in 2016.

. . .

We initiated these trials based on encouraging interim data from our Phase 2 clinical trial that was fully enrolled in March 2010. At the time of the interim analysis, all patients in this Phase 2 clinical trial had reached at least 24 months of follow-up with a median follow-up period of approximately 33 months. The study met its primary objective with an established median disease-free survival of 14.1 months. The secondary endpoint of overall survival showed one-year overall survival to be 86%. Efficacy data for the 26 patients receiving high dose therapy demonstrated median disease-free survival of 15.3 months and a one-year overall survival rate of 96 percent. *Algenpantucel-L has demonstrated good tolerability and a favorable safety profile* in the Phase 2 clinical trial. The most common treatment-related adverse reactions (reported by at least 5 percent of patients) for the product candidate included injection site reactions (40%), induration (19%), injection site pain (10%), pyrexia (9%), erythema (7%), fatigue (19%), nausea (6%), lymphopenia (6%) and pruritus (5%). All of these events were grade three or less. The common terminology criteria, or CTC, of the National Cancer Institute, or NCI, categorizes adverse events into five grades, where grade one is mild, grade two is moderate, grade three is severe, grade four is life-threatening and grade five is death.

52.     The 2015 10-K contained signed certifications pursuant to SOX by Defendants Charles Link and Henneman, stating that the financial information contained in the 2015 10-K was accurate and disclosed any material changes to the Company's internal control over financial reporting.

53.     On April 29, 2016, NewLink filed a Quarterly Report on Form 10-Q with the SEC announcing the Company's financial and operating results for the quarter ended March 31, 2016 (the "Q1 2016 10-Q").  For the quarter, NewLink reported a net loss of $23.72 million, or $0.82 per diluted share, on revenue of $5.71 million, compared to net profit of $11.19 million, or $0.35 per diluted share, on revenue of $39.20 million for the same period in the prior year.

54.     In the Q1 2016 10-Q, NewLink stated, in part:

Our most advanced product candidate, algenpantucel-L, which utilizes our HyperAcute Cellular Immunotherapy technology, is being studied in two randomized Phase 3 clinical trials. Our first Phase 3 clinical trial, IMPRESS (IMmunotherapy for Pancreatic REsectable cancer Survival Study) has completed enrollment of 722 patients with resected pancreatic cancer. The primary endpoint for our IMPRESS trial is overall survival. We expect to report top-line IMPRESS results before the end of June 2016. Our second Phase 3 clinical trial, PILLAR (Pancreatic Immunotherapy with algenpantucel-L for Locally Advanced non-Resectable disease), has completed enrollment with over 300 patients. The primary endpoint for our PILLAR trial is overall survival. We initiated these trials based on encouraging Phase 2 data that suggest potential to improve both disease-free and overall survival. Algenpantucel-L has received Fast Track Designation from the FDA for the treatment of Stage I/II resected pancreatic adenocarcinoma in combination with gemcitabine chemotherapy with or without 5-FU-based chemoradiotherapy and Orphan Drug designation from the FDA for the treatment of pancreatic cancer, as well as Orphan Medicinal Product designation from the European Commission for the treatment of pancreatic cancer.

55.     The Q1 2016 10-Q contained signed certifications pursuant to SOX by Defendants Charles Link and Henneman, stating that the financial information contained in the Q1 2016 10-Q was accurate and disclosed any material changes to the Company's internal control over financial reporting.

56.     The statements referenced in ¶¶ 19 and 21-55 were materially false and misleading because Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operational and compliance policies. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) algenpantucel-L was ineffective and potentially harmful to patients; and (ii) as a result of the foregoing, NewLink's public statements were materially false and misleading at all relevant times.

### The Truth Emerges

57.     On May 9, 2016, post-market, NewLink announced that algenpantucel-L did not meet the main goal in the Company's Phase 3 IMPRESS study.  Patients treated with algenpantucel-L lived for a median of 27.3 months in NewLink's Phase 3 trial, compared to median survival of 30.4 months for patients treated with standard therapy, suggesting that patients were actually ***harmed*** by NewLink's treatment as opposed to other therapies

58.     As a result of this news, NewLink's stock price fell $5.05, or 30.61%, to close at $11.45 on May 10, 2016.

59.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

### PLAINTIFF'S CLASS ACTION ALLEGATIONS

60.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired NewLink securities during the Class Period (the "Class"); and were damaged upon the revelation of the alleged corrective disclosures.  Excluded from the Class are Defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate

families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

61.     The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, NewLink securities were actively traded on the NASDAQ.  While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class.  Record owners and other members of the Class may be identified from records maintained by NewLink or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

62.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

63.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.  Plaintiff has no interests antagonistic to or in conflict with those of the Class.

64.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of NewLink;

- whether the Individual Defendants caused NewLink to issue false and misleading financial statements during the Class Period;

- whether Defendants acted knowingly or recklessly in issuing false and misleading financial statements;

- whether the prices of NewLink securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

65.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

66.    Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

- NewLink securities are traded in an efficient market;

- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;

- the Company traded on the NASDAQ and was covered by multiple analysts;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

- Plaintiff and members of the Class purchased, acquired and/or sold NewLink securities between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

67. Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

68. Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

## COUNT I

### (Against All Defendants For Violations of
### Section 10(b) And Rule 10b-5 Promulgated Thereunder)

69. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

70. This Count is asserted against Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

71. During the Class Period, Defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon Plaintiff and the other members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase and sale of securities. Such scheme was intended to, and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of NewLink securities; and (iii) cause Plaintiff and other members of the Class to purchase or otherwise acquire NewLink

securities and options at artificially inflated prices.  In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each of them, took the actions set forth herein.

72.      Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the Defendants participated directly or indirectly in the preparation and/or issuance of the quarterly and annual reports, SEC filings, press releases and other statements and documents described above, including statements made to securities analysts and the media that were designed to influence the market for NewLink securities.  Such reports, filings, releases and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about NewLink's finances and business prospects.

73.      By virtue of their positions at NewLink, Defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiff and the other members of the Class, or, in the alternative, Defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to Defendants.  Said acts and omissions of Defendants were committed willfully or with reckless disregard for the truth.  In addition, each Defendant knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

74.      Defendants were personally motivated to make false statements and omit material information necessary to make the statements not misleading in order to personally benefit from the sale of NewLink securities from their personal portfolios.

75.      Information showing that Defendants acted knowingly or with reckless disregard for the truth is peculiarly within Defendants' knowledge and control.  As the senior managers

and/or directors of NewLink, the Individual Defendants had knowledge of the details of NewLink's internal affairs.

76.     The Individual Defendants are liable both directly and indirectly for the wrongs complained of herein.   Because of their positions of control and authority, the Individual Defendants were able to and did, directly or indirectly, control the content of the statements of NewLink.   As officers and/or directors of a publicly-held company, the Individual Defendants had a duty to disseminate timely, accurate, and truthful information with respect to NewLink's businesses, operations, future financial condition and future prospects.   As a result of the dissemination of the aforementioned false and misleading reports, releases and public statements, the market price of NewLink securities was artificially inflated throughout the Class Period.   In ignorance of the adverse facts concerning NewLink's business and financial condition which were concealed by Defendants, Plaintiff and the other members of the Class purchased or otherwise acquired NewLink securities at artificially inflated prices and relied upon the price of the securities, the integrity of the market for the securities and/or upon statements disseminated by Defendants, and were damaged thereby.

77.     During the Class Period, NewLink securities were traded on an active and efficient market.   Plaintiff and the other members of the Class, relying on the materially false and misleading statements described herein, which the Defendants made, issued or caused to be disseminated, or relying upon the integrity of the market, purchased or otherwise acquired shares of NewLink securities at prices artificially inflated by Defendants' wrongful conduct.   Had Plaintiff and the other members of the Class known the truth, they would not have purchased or otherwise acquired said securities, or would not have purchased or otherwise acquired them at the inflated prices that were paid.   At the time of the purchases and/or acquisitions by Plaintiff and the Class, the true

value of NewLink securities was substantially lower than the prices paid by Plaintiff and the other members of the Class.  The market price of NewLink securities declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

78.     By reason of the conduct alleged herein, Defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

79.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases, acquisitions and sales of the Company's securities during the Class Period, upon the disclosure that the Company had been disseminating misrepresented financial statements to the investing public.

## COUNT II

**(Violations of Section 20(a) of the
Exchange Act Against The Individual Defendants)**

80.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

81.     During the Class Period, the Individual Defendants participated in the operation and management of NewLink, and conducted and participated, directly and indirectly, in the conduct of NewLink's business affairs.  Because of their senior positions, they knew the adverse non-public information about NewLink's misstatement of income and expenses and false financial statements.

82.     As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to NewLink's

financial condition and results of operations, and to correct promptly any public statements issued by NewLink which had become materially false or misleading.

83.     Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which NewLink disseminated in the marketplace during the Class Period concerning NewLink's results of operations.   Throughout the Class Period, the Individual Defendants exercised their power and authority to cause NewLink to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of NewLink within the meaning of Section 20(a) of the Exchange Act.  In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of NewLink securities.

84.     Each of the Individual Defendants, therefore, acted as a controlling person of NewLink.  By reason of their senior management positions and/or being directors of NewLink, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, NewLink to engage in the unlawful acts and conduct complained of herein.  Each of the Individual Defendants exercised control over the general operations of NewLink and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

85.     By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by NewLink.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

A.     Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B.      Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C.      Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D.      Awarding such other and further relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

Dated:   May 12, 2016

Respectfully submitted,

**POMERANTZ LLP**

*/s/ Jeremy A. Lieberman*
Jeremy A. Lieberman
J. Alexander Hood II
Marc Gorrie
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone:  (212) 661-1100
Facsimile:   (212) 661-8665
Email:  jalieberman@pomlaw.com
            ahood@pomlaw.com
            mgorrie@pomlaw.com

**POMERANTZ LLP**
Patrick V. Dahlstrom
10 South La Salle Street, Suite 3505
Chicago, Illinois 60603
Telephone:  (312) 377-1181
Facsimile:   (312) 377-1184
Email:  pdahlstrom@pomlaw.com

**BRONSTEIN, GEWIRTZ
& GROSSMAN, LLC**
Peretz Bronstein
60 East 42nd Street, Suite 4600
New York, NY 10165
Telephone: (212) 697-6484
Facsimile (212) 697-7296
Email:  peretz@bgandg.com

*Attorneys for Plaintiff*

**Submission Date**

2016-05-10 18:58:43

# CERTIFICATION PURSUANT TO FEDERAL SECURITIES LAWS

1. I make this declaration pursuant to Section 27(a)(2) of the Securities Act of 1933 ("Securities Act") and/or Section 21D(a)(2) of the Securities Exchange Act of 1934 ("Exchange Act") as amended by the Private Securities Litigation Reform Act of 1995.
2. I have reviewed a Complaint against of  NewLink Genetics Corporation ("NewLink" or the "Company") (NASDAQ: NLNK), and, authorize the filing of a comparable complaint on my behalf.
3. I did not purchase or acquire NewLink securities at the direction of plaintiffs' counsel or in order to participate in any private action arising under the Securities Act or Exchange Act.
4. I am willing to serve as a representative party on behalf of a Class of investors who purchased or acquired NewLink securities during the class period, including providing testimony at deposition and trial, if necessary. I understand that the Court has the authority to select the most adequate lead plaintiff in this action.
5. To the best of my current knowledge, the attached sheet lists all of my transactions in NewLink securities during the Class Period as specified in the Complaint.
6. During the three-year period preceding the date on which this Certification is signed, I have not sought to serve as a representative party on behalf of a class under the federal securities laws.
7. I agree not to accept any payment for serving as a representative party on behalf of the class as set forth in the Complaint, beyond my pro rata share of any recovery, except such reasonable costs and expenses directly relating to the representation of the class as ordered or approved by the Court.
8. I declare under penalty of perjury that the foregoing is true and correct.

# Name

**Print Name**

Trevor Abramson

# Acquisitions

**Configurable list (if none enter none)**

| Date Acquired | Number of Shares Acquired | Price per Share Acquired |
| --- | --- | --- |
| 10/01/2014 | 200 | 23.065 |

# Sales

# Documents & Message

**Upload your documentations**

**Your Message**

Please send confirmation of this in an email.  Thank you

**Signature**



**Full Name**

Trevor Abramson

REDACTED



**NEWLINK GENETICS CORPORATION (NLNK)**                    **Abramson, Trevor**

### LIST OF PURCHASES AND SALES

| DATE | PURCHASE OR SALE | NUMBER OF SHS/UTS | PRICE PER SH/UT |
|------|------------------|-------------------|-----------------|
| 10/01/2014 | Purchase | 200 | $23.0650 |

brewbaker